**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

Case Number: **19-60218-Civ-COOKE/HUNT**

ANDREW THOMPSON,
      Plaintiff,
-v-

PORTFOLIO RECOVERY
ASSOCIATES, LLC,
      Defendant      /



FILED BY_____D.C.

APR 10 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## AMENDED COMPLAINT

COMES NOW Plaintiff, ANDREW THOMPSON, and sues Defendant, PORTFOLIO RECOVERY ASSOCIATES, LLC (hereinafter, "PRA"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"); the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692; and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 et seq. ("FCCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like PRA from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991).   Senator Hollings presumably intended

1

to give telephone subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robo-calls. The FCC received more than 215,000 TCPA complaints in 2014." Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted robo-calls, Texts to Wireless Phones, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

5.  The FDCPA was enacted in 1977 to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors."  Its purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

## JURISDICTION AND VENUE

6. This is an action for damages exceeding thirty thousand dollars ($30,000.00) exclusive of attorney fees and costs.

7. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, federal question jurisdiction, as this action involves violations of the TCPA.

8. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

9. The alleged violations described herein occurred in Broward County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b) (2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## **FACTUAL ALLEGATIONS**

10. Plaintiff is a natural person, and citizen of the State of Florida, residing in Broward County, Florida.

11. Plaintiff is a natural person, whom Defendant PRA alleged was obligated to pay a debt, and therefore, Plaintiff is a "consumer" or "debtor" as defined in Florida Statute § 559.55(8).

12. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant, PRA, is a Corporation with a principal place of business located at 120 Corporate Boulevard, Suite 100, Norfolk, VA 23502 and which conducts business in the State of Florida.

3

14. The alleged debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

15. PRA is a "creditor" as defined in Florida Statute §559.55(5)

16. Defendant, PRA is a "debt collector" as defined by Section 803(6) of the FDCPA, 15§ 1692a (6).  At all times relevant to this Complaint, PRA was acting as a debt collectors with respect to a debt allegedly owe by me and/or by its customer.

17.  PRA sought to collect from Plaintiff an alleged debt arising from transactions incurred for personal, family, or household purposes.

18. A "debt," as defined in Section 803(5) of the FDCPA, 15 U.S.C. § 1692a (5), "means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

19. Defendant PRA is a "debt collector" as that term is defined by the FDCPA.

20. Defendant PRA, is a "person" as defined under the FCCPA because it attempted to collect an alleged consumer debt from me, Plaintiff, Andrew Thompson and/or from its customer – which Plaintiff is not.

21.  Within the last year, Defendant, PRA attempted to collect a debt from Plaintiff.

22.  Defendant PRA regularly collects, or attempts to collect debts allegedly owed to others and has engaged in an act or omission prohibited by the FDCPA.

23. During the course of its attempts to collect debts allegedly owed to the alleged original creditor, Defendant PRA, regularly sends to alleged debtors bills, statements, and/or other correspondence, via the mail and/or electronic mail, and initiates contact with

4

alleged debtors via various means of telecommunication, such as by telephone and facsimile.

24. Plaintiff, Andrew Thompson is a "consumers," as defined in Section 803(3) of the FDCPA, 15 U.S.C. § 1692a (3), which "means any natural person obligated or allegedly obligated to pay any debt."

25. Plaintiff, Andrew Thompson is a "natural persons" whom is allegedly obligated to pay an alleged debt.

26. Plaintiff, Andrew Thompson is a "consumers" as that term is defined by the FDCPA and the FCCPA.

27.  Plaintiff, Andrew Thompson, allegedly owes a "debt" as that term is defined by the FDCPA and the FCCPA.

28. As partially shown below, PRA called me, the Plaintiff on my cellular telephone at least thirty (30) times on or before December 12, 2018 through and including January 17, 2019 (see below), presumably in an attempt to contact one of its customers regarding the collection of an alleged debt from its customer and/or from me, Andrew Thompson, the called party and non-customer.

Ringtone

**Portfolio Recovery**

+1 800-772-1413

Today 8:28 AM

Today 8:27 AM

Dec 18 1:02 PM

Dec 12 3:02 PM

Dec 12 9:49 AM



EDIT   SHARE

+1 800-772-1413

Dec 21 3:23 PM

Dec 21 3:09 PM

Dec 21 8:28 AM

Dec 21 8:27 AM

Dec 18 1:02 PM

Ringtone

+1 800-772-1413

Dec 27 3:05 PM

Dec 27 8:55 AM

Dec 24 10:55 AM

Dec 21 3:23 PM

Dec 21 3:09 PM

Dec 21 8:28 AM

Ringtone

+1 800-772-1413

Jan 17 3:09 PM

Jan 17 1:05 PM

Jan 14 2:52 PM

Jan 14 8:48 AM

Jan 11 3:03 PM

Jan 11 12:34 PM

7

29. Upon information and belief, PRA attempted to, among other things, collect an alleged debt from me and/or its customer or to obtain information from me regarding its customer, by this campaign of telephone calls.

30. All of the calls the Defendant made to my cellular telephone number were made using a "predictive dialer" or similar "automatic telephone dialing system" (ATDS). Defendant's predictive dialer or similar ATDS has the present capacity to store or produce telephone numbers to be called, and to generate random or sequential numbers, and to then, dial those numbers; PRA's predictive dialer or similar ATDS also has the capacity to dial numbers without human intervention; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls"). Moreover, Defendant's ATDS lacks any feature for comparing "do not call" or "wrong" numbers to those associated with accounts.

31. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (754) ***-3079, and was the called party and recipient of each and every one of Defendant's calls.

32. Beginning on or before December 12. 2018, PRA, through its auto-dialer, began bombarding my cellular telephone (754) ***-3079, apparently in an attempt to collect a debt allegedly owed by me or by someone other than myself. Nevertheless, I never provided express written consent to be called by PRA and/or its auto-dialer.

33. Defendant knowingly and/or willfully harassed and abused me on numerous occasions by calling my cellular telephone number nearly every day and sometimes up to two (2) times a day. Defendant's calls, which were conducted on or before December 15, 2018 through and including January 17, 2019, occurred with such frequency as can

reasonably be expected to harass me, all in an effort to the collect a prescription payment or some other alleged debt.

34. On or about December 21, 2018 is when I first notified Defendant, PRA that the calls made to my cell phone by its auto-dialer was <u>not</u> reaching PRA's intended recipient's phone number (which was apparently one of its customers), but was reaching me instead - the called party, at my cellular phone number ending in 3079.  Specifically, on or about December 21, 2018, I first notified PRA to stop calling my cell phone by calling PRA at 1-800-772-1413 and speaking with a PRA employee and advising her, among other things, to "please do not call this number" and to remove my cellular telephone (754) ***-3079 from its system's calling list.

35. Despite I notifying PRA on December 21, 2018, that its ATDS was reaching me, instead of its customer, and to stop calling my cell phone, PRA still chose to call my cell repeatedly between December 12, 2018 and up to a few days before I this instant complaint on January 25, 2019.  Whenever I answered one of Defendant PRA's call, I would hear a momentary pause before PRA's representative started speaking to me. This pause is a hallmark of a predictive dialer.   According to experts on telecommunications equipment, predictive dialers have the inherent present capacity to both (1) store and dial a list of telephone numbers without human intervention, and (2) generate random or sequential telephone numbers and to then dial those numbers. <u>In addition, the FCC's 2003 and 2008 Orders, which, in this 11th Circuit remain valid, both define predictive dialers as ATDSs for purposes of the TCPA.</u>

36. During one of our conversations, a PRA representative advised me that the number PRA's phone system was attempting to call was (305) *** - 7774. I then explained

to the representative that apparently, there must be some sort flaw with PRA's dialing system, because (as I explained to the representative), the calls were not reaching PRA's intended recipient (it current customer), but were reaching me, on my cell phone number instead – the "called party" (See *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir.2014); also see See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) (holding that "called party" for purposes of [47 U.S.C.] § 227(b)(1)(A)(iii) was not [the] former customer, but the Plaintiffs. Thus, the purpose of Defendant's calls to me, the Plaintiff, was, among other reasons, to collect a debt allegedly owed by me or by someone other person than myself, the Plaintiff. As such, I clearly was not the intended recipient of the Defendant's calls – this is true, because I never provided express written consent to be called by PRA and/or its ATDS. Nevertheless, the representative still asked me if I knew how to contact the person by the name of Willie and who owns the -7774 number. The impression I got from PRA's is that she thought I was lying to her – and that maybe I was the person PRA was trying to reach.

37. At the conclusion of our conversation, the PRA representative assured me (as did the PRA' representative on December 21, 2018), that she would take care of the matter and that I would not receive any more phone calls to my cell phone from PRA's ATDS. I advised the representative, among other things, to "please do not call this number" and to remove my cellular telephone (754) ***-3079, its current customer's number ending in -7774, and any other numbers from its system that maybe forwarding or transferring PRA's ATDS calls to me, the called party.

38. Even after I told PRA on December 21, 2018 that it was calling the wrong party, PRA still decided to call me on numerous occasions, and did so repeatedly. In these calls,

PRA indicated that I owe the alleged debt or that I may have information concerning the person who actually owes the debt, even though that is not the case. Through information and belief, PRA, through its ATDS has allowed such wrong party calls even after the collector has marked the phone number as incorrect.

39. Once it received notice from me that it has contacted the wrong party, PRA had no reasonable basis to continue calling that telephone number again unless and until it possesses additional information showing that the telephone number called belongs to its client, the consumer, the person who allegedly owes the debt or to a person it has reason to believe possesses location information about that consumer.

40. PRA's collectors have called me multiple times to request location information about its customer, the consumer. Apparently, PRA continued making the calls because it believed I was the consumer's family member or friend.

41. Defendant placed at least thirty (30) robo-calls to Plaintiff, using a predictive dialer or some other ATDS, apparently in order to collect a debt allegedly owed by Plaintiff and/or by an unknown third party by the name of "Willie". Defendant's ATDS continued making such calls, despite Plaintiff's repeated requests that Defendant cease doing so. Defendant knew that it was calling a third party, rather than the alleged debtor "Willie", but repeatedly called me anyway, and did so, without my express consent.

42. Each of the auto dialer calls the Defendant made to my cellular telephone on or after December 12, 2018 were done so using a "predictive dialer" or some other "automatic telephone dialing system" that has the capacity to dial numbers without human intervention and were made without me ever giving Defendant, PRA consent to call my cellular telephone (754) ***-3079.

43. The auto dialer calls from Defendant came from the telephone number including but not limited to ((1-(800) 772-1413), and when that number is called a pre-recorded voice states in part, ... *"Thank you for calling Portfolio Recovery Associates, please note, we recently changed our ... ... "*

44. Despite its lack of consent to call my cellular telephone (754) \*\*\*-3079 and despite my requests for the calls to stop, the Defendant continued to call me.

45. I received at least thirty (30) calls from the Defendant between December 15, 2018 and up until January 17, 2019.

46. PRA has a corporate policy to use a "predictive dialer" or some other "automatic telephone dialing system" that has the capacity to dial numbers without human intervention and to call individuals just as it did to my cellular telephone in this case.

47. PRA has a corporate policy to use a "predictive dialer" or some other "automatic telephone dialing system" that has the capacity to dial numbers without human intervention just as it did to my cellular telephone in this case, with no way for the consumer (Plaintiff), or PRA, to remove the number.

48. PRA's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to PRA they wish for the calls to stop.

49. PRA have settled, and/or have numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

50. PRA have settled, and/or have numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite numerous requests to stop.

51. PRA has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call those consumers.

52. PRA's corporate policy provided no means for me to have my number *timely* and immediately removed from Defendant's call list.

53. PRA has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called.

54. Not a single call placed by PRA's auto-dialer to me were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

55. Here, PRA willfully and/or knowingly violated the TCPA with respect to Plaintiff, the called party's cell phone. This also impaired the usefulness of these features of my cellular phone, which are designed to inform the user of important missed communications.

56. From each and every call placed without consent by PRA to my cell phone, I suffered the injury of invasion of privacy and the intrusion upon my right of seclusion.

57. From each and every call without express consent placed by PRA to my cell phone, I suffered the injury of occupation of my cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from PRA calls.

58. From each and every call placed without express consent by PRA to my cell phone, I suffered the injury of unnecessary expenditure of my time.  For the calls I answered (or tried to answer), the time I spent on the call was unnecessary as I repeatedly asked for the calls to stop.  Even for unanswered calls, I had to waste time to unlock my phone and deal with missed call notifications and call logs that reflected the unwanted calls.

13

This also impaired the usefulness of these features of my cellular phone, which are designed to inform the user of important missed communications.

59. Each and every call placed (without my express consent) by PRA to my cell phone was an injury in the form of a nuisance and annoyance to me. For calls that were answered, I had to go to the unnecessary trouble of answering them. Even for unanswered calls, I had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls.

60. Each and every call placed without express consent by PRA to my cell phone resulted in the injury of unnecessary expenditure of my cell phone's battery power.

61. Each and every call placed without express consent by PRA to my cell phone resulted in the injury of a trespass to my chattel, namely my cellular phone and my cellular phone services.

62. As a result of the answered and unanswered calls described above, I suffered an invasion of privacy. I was also affected in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress, and aggravation. Due to both answered and unanswered calls, I suffered the expenditure of my time, exhaustion of my cellular telephone battery, unavailability of my cellular telephone while ringing, waste of my time, causing the risk of personal injury due to distraction, and trespass upon my chattels. All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to apparently collect an alleged debt from me through the use of automated/predictive dialing technology.

14

## COUNT I

### (Knowing and/or Willful Violation of the TCPA)
*§ 227(b)(1)(A)(iii)*

63. Plaintiff fully incorporates and re-alleges paragraphs one (1) through sixty-two

(62) as if fully set forth herein.

64. 47 U.S.C. 227(b)(1)(A) - Restrictions on use of automated telephone equipment

provides as follows:

> *(1) Prohibitions*
>
>> *It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States*
>>
>> *(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--*
>>
>>> *(i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);*
>>> *(ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or*
>>> *(iii) **to any telephone number assigned to a** paging service, **cellular telephone service,** specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;(Emphasis Added).*

65. Defendant, PRA knowingly and willfully violated the TCPA with respect to

Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone

after I, the Plaintiff notified PRA that I wished for the calls to stop.  Defendant violated the

TCPA by continuously calling me on my cellular phone without first obtaining my prior

express consent and continue calling, even after I asked it to stop calling.  Shockingly,

Defendant, PRA continued calling my cellular phone - **even after I continued notifying Defendant that it was reaching the wrong number and wrong party.** Moreover, Defendant violated the TCPA by using equipment which constitutes an automatic telephone dialing system for the express purpose of, among other things, collecting an alleged debt from me, the Plaintiff.

66. Defendant's repeated calls caused Plaintiff actual harm including, but not limited to, invasion of my personal privacy, aggravation, nuisance and disruption in my daily life, reduction in my cellular telephone battery life, data loss, messaging charges, and loss of use of my cellular telephone.

67. As a result of the aforementioned violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each call in negligent violation of the TCPA, and/or up to $1,500 in statutory damages for each call in willful violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against PRA for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II

### (Violation of the TCPA)
*47 U.S.C. § 227(b)(1)(A)(iii)*

68. Plaintiff fully incorporates and re-alleges paragraphs one (1) through sixty-seven (67) as if fully set forth herein.

69. PRA violated the TCPA with respect to Plaintiff for each of the auto-dialer calls made to Plaintiff's cellular telephone before and after Plaintiff notified PRA that he wished for the calls to stop.

70. PRA repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against PRA for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

### COUNT III

**(Violation of the FDCPA)**
*15 U.S.C. § 1692b*

71. Plaintiff fully incorporates and re-alleges paragraphs one (1) through seventy (70) as if fully set forth herein.

72. FDCPA, 15 U.S.C. § 1692b(3) governs the manner in which debt collectors may communicate with any person other than the consumer for purposes of acquiring location information about the consumer. That section prohibits debt collectors from communicating with any person about a consumer more than once unless requested by the person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete information.

17

73. In numerous instances, PRA, through the means described in Paragraphs 28-45, and in connection with the collection of an alleged debt, directly or indirectly, has communicated more than once with me, the Plaintiff, for the purpose of obtaining location information about its customer, the consumer. PRA continued calling me, even though: (i) I had not requested additional calls; and (ii) it was not reasonable for PRA to believe that my previous denial of knowledge of its customer, the consumer or the consumer's location was erroneous or incomplete or that I subsequently obtained correct or complete location information.

74. The acts and practices alleged in Paragraphs 28-45 constitute violations of the FDCPA, 15 U.S.C. § 1692b (3).

## COUNT IV

### (Violation of the FDCPA)
*15 U.S.C. § 1692d (5)*

75. Plaintiff fully incorporates and re-alleges paragraphs one (1) through seventy-four (74) as if fully set forth herein.

76. FDCPA, 15 U.S.C. § 1692d(5) provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> ....... *(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.*

77. In numerous instances, PRA, through the means described in Paragraphs 28-45, and in connection with the collection of an alleged debt, directly or indirectly, has engaged in conduct in which the natural consequence of was to harass, oppress, or abuse me when it continuously caused my cell phone ending in -3079 to ring, and did so, even after I asked

18

it to stop calling my cell phone. Even after I repeatedly notified PRA that I was not the person that it was trying to reach, PRA still insisted on continuously causing my cell phone to ring, and it did so, with the intent to annoy, abuse, and/or harass me regarding a debt it alleged that I, and/or someone else owed.

78. The acts and practices alleged in Paragraphs 28-45 constitute violations of the FDCPA, 15 U.S.C. § 1692d (5).

## COUNT V

### (Violation of the FCCPA)
*F.S. 559.72(7)*

79. Plaintiff fully incorporates and re-alleges paragraphs one (1) through seventy-eight (78) as if fully set forth herein.

80. Through information and belief, PRA has violated Florida Statute § 559.72(7) by willfully communicating with the Plaintiff and/or any member of his family with such frequency as can reasonably be expected to harass the Plaintiff and/or any member of his family. This is true because even after Plaintiff notified Defendant that it was calling, reaching, and trying to collect a debt from the wrong consumer - and to cease the calls, Defendant still choose to continue calling Plaintiff to collect the subject debt – implying in essence, that Plaintiff was obligated or allegedly obligated to pay said debt.

81. Through information and belief, PRA has violated Florida Statute § 559.72(7) by willfully communicating with the Plaintiff and/or any member of his family with such frequency as can reasonably be expected to harass the Plaintiff and/or any member of his family.

82. At all times relevant to this action PRA is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

83. Through information and belief, PRA has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the Plaintiff and/or any member of his family.

84. Through information and belief, PRA's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against PRA for statutory damages, punitive damages, actual damages, costs, interest, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ Andrew Thompson, April 10  2019
Andrew Thompson
2798 NW 20th Street
Fort Lauderdale, Florida 33311